See also 966 F.2d 579.

---

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**Larry O. HULSEY, an individual; et al., Defendants.**

**No. CIV–90–1472–W.**

United States District Court,
W.D. Oklahoma.

May 8, 1992.

Ricki V. Sonders, Jane S. Eulberg, John C. Platt, Edwards Sonders & Propester, Oklahoma City, Okl., for plaintiff.

Karen L. Howick, J. David Jacobson, Anita M. Moorman, Karen L. Howick & Associates, Mark S. Edmondson, Mack J. Morgan, III, Fred R. Gipson, D. Kent Meyers, Crowe & Dunlevy, Oklahoma City, Okl., for defendants.

### ORDER

LEE R. WEST, District Judge.

This matter comes before the Court on the Motion for Partial Summary Judgment

as to All Affirmative Defenses Based upon Plaintiff's Receipt of Proceeds of Oil and Gas Sold From Properties Securing Defendants' Obligations filed pursuant to Rule 56, F.R.Civ.P., by the plaintiff, Federal Deposit Insurance Corporation (FDIC). Defendants Larry O. Hulsey (Hulsey) and Larry O. Hulsey and Company (Company) have responded in opposition to the motion. FDIC has replied and the defendants have surreplied. Based upon these submissions, the Court makes its determination.

FDIC brought this action to enforce the defendants' obligations on a loan originally made by Continental Illinois National Bank and Trust Company of Chicago (CINB) and transferred to FDIC on June 29, 1987, as part of an assistance transaction. The instruments evidencing this loan included thirty-five (35) mortgages covering oil and gas interests owned by the Company and Hulsey in Oklahoma. Each mortgage provides:

### Assignment of Production

3.1 *Assignment.* As further security for the payment of the Indebtedness, the Mortgagor hereby transfers, assigns, warrants and conveys to the Bank ... all Hydrocarbons which are thereafter produced from and which accrue to the Mortgaged Property, and all proceeds therefrom. All parties producing, purchasing or receiving any such Hydrocarbons, or having such, or proceeds therefrom, in their possession for which they or others are accountable to the Bank by virtue of the provisions of this Article, are authorized and directed to treat and regard the Bank as the assignee and transferee of the Mortgagor and entitled in the Mortgagor's place and stead to receive such Hydrocarbons and all proceeds therefrom....

The Secured Note and Section 2 of the Third Amendment to the Credit Agreement and Amendment to Note executed by CINB and the Company expressly state that the Company's obligations became due and payable on October 1, 1987. On July 13, 1989, FDIC demanded payment of the amounts then due and owing. On August 11, 1989, FDIC mailed letters to third-party purchasers of the defendants' oil and gas production and requested these purchasers to "[r]emit all amounts to be paid by you representing the Mortgagors' share of the proceeds of such hydrocarbons, to [FDIC]."

The defendants have argued that because FDIC was not entitled to receive these proceeds, the defendants are relieved of their contractual obligations to repay the loan. The defendants' argument is based upon real property law and their interpretation of the Oklahoma Supreme Court's decision in *Teachers Insurance and Annuity Association of America v. Oklahoma Tower Associates Limited Partnership,* 798 P.2d 618 (Okla.1990). FDIC has responded that Article 9 of the Uniform Commercial Code, 12A O.S. § 9–101 et seq., governs FDIC's entitlement to these proceeds but that under either law, FDIC had the right to send the letters and receive the proceeds of oil and gas sold from the mortgaged properties.

Acknowledging the uncertain relationship between Article 9 and real property law in these circumstances, the Court has examined FDIC's entitlement under both. In so doing, the Court finds that FDIC is entitled to summary judgment as requested.

Generally, oil and gas, once extracted, are considered personal property subject to Article 9. The Court has therefore examined FDIC's collection rights first as a secured party under title 12A, section 9–502(1) of the Oklahoma Statutes. This section provides

"[w]hen so agreed, and in any event on default, the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he is entitled under Section 9–306."

12A O.S. § 9–502(1).

FDIC has argued that it was entitled to request and receive these proceeds of oil and gas sold from properties securing the defendants' obligations to FDIC because

the parties "so agreed" to FDIC's entitlement to the same in Section 3.1 of the mortgages and because the loan was in default. The Court agrees. Accordingly, if Article 9 governs FDIC's interest in the minerals produced from the mortgaged properties and the accounts and proceeds derived from the sale thereof in these circumstances, FDIC had the right to collect under section 9–502(1).

 As stated, the Court has also examined FDIC's rights under Oklahoma real property law because before extraction, minerals are deemed part of the real estate and a mortgagee's rights are therefore governed by real property law. Title 46, section 4 of the Oklahoma Statutes as enacted at the time the subject mortgages were executed in 1982 and 1983 provided that a mortgagor could assign rents and profits from mortgaged real estate as additional security for the debts secured by the mortgage if the assignment

(1) was made contemporaneously with the execution of the mortgage;

(2) covered a lease or leases then existing or thereafter executed;

(3) was not conditioned upon a future default by the mortgagor; and

(4) provided for the immediate collection of rents and profits by the mortgagee.

46 O.S. § 4 (as amended in 1979).

The defendants have argued that although the instant assignment of production clauses in Section 3.1 of the mortgages are facially valid under section 4 as then enacted they are nevertheless invalid because neither CINB nor FDIC treated the assignments as present assignments. The defendants have argued that CINB and FDIC treated the assignments as ones conditioned upon a future default by the Company as evidenced by the fact that FDIC did not initiate collection of the rents and profits until a default occurred and thus these assignments do not satisfy the requirements of section 4. The Court disagrees.

The defendants have admitted that the clauses as written are present assignments

and enforceable under section 4. Thus, as long as the mortgagee had the immediate right to the rents and profits upon execution of the mortgage (as the defendants have conceded that CINB had), FDIC is entitled to enforce that right even though the mortgagor, directly or indirectly, continued to collect the rents and profits and/or even though a default occurred prior to any action by the mortgagee.

Accordingly, the Court finds based upon the foregoing that FDIC's Motion for Partial Summary Judgment as to All Affirmative Defenses Based upon Plaintiff's Receipt of Proceeds of Oil and Gas Sold From Properties Securing Defendants' Obligations is GRANTED and thus, to the extent any affirmative defenses are grounded on FDIC's receipt of these proceeds, they fail as a matter of law.